W. R. RICKS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 12803. Promulgated July 17, 1928.

*George D. Wick, Esq.*, for the petitioner.
*T. M. Mather, Esq.*, for the respondent.

SIEFKIN: This is a proceeding for the redetermination of a deficiency in income tax for 1920 of $5,747.63. The errors assigned are

that the respondent erred in˙ disallowing a loss of $19,124.79, and other losses on investments totaling $12,550.32. At the hearing the petitioner abandoned its contention as to $5,002.82 of the second item. The petitioner offered in evidence the entire record of the proceedings in Docket No. 3656, together with the findings of fact and opinion of this Board, reported in 5 B. T. A. 727, with respect to the issue as to the loss of $19,124.79. Other evidence in this proceeding indicates that the petitioner paid, in 1920, notes signed in 1918 on behalf of the Giles Bay Lumber Co., in the total amount of $19,124.79, and that such advances to or investment in that company became worthless in 1920. In that respect the determination of the respondent was erroneous.

It is urged in the brief of the petitioner that the record in Docket No. 3656 establishes that the petitioner sustained a loss of $34,673.19, or one-half of $69,346.39 invested by the petitioner and McCreight. The petition in this proceeding, however, limits the issue to the amount of $19,124.79, and we are unable to hold that the larger amount should have been allowed even if we were convinced that such were the case. We agree, however, with the opinion of the member who heard the case of the corporation that " it is almost impossible to ascertain what the true facts of the transaction in question were," and we can not say that more than $19,124.79 should have been allowed.

In 1918 the petitioner purchased 62 shares of stock in the Crescent Refining Co. of Newkirk, Okla., for $3,100. In 1920 he wrote to the president of the company for information of its affairs and received the following answer:

I received your letter of May 15 asking for information in regards to the Crescent Refining Co. and what assets, if any, and in reply will say, after the Crescent Refining Co. was sold out for the indebtedness against it a little over a year ago there were no assets left except four leases two of which have already expired; the two remaining leases are quite a distance from any production but an offset well is being drilled near one of them, and it will depend on the outcome of this test as to whether or not these leases are worth anything.

The suits brought by the new Directors against the Directors who were in charge at the time the company got into the shape they were in are still pending, but I think a hearing will be had on one of these suits in the near future. However, even though we win in this suit and get a judgment against the parties, it is my opinion that it will be pretty hard to collect on any judgment we may get against them, as I understand they have no property at this time or anything tangible that we may collect on. But we will try to get the judgment and see what we can do.

It is a dirty shame that the stockholders of the Crescent Refining Co. will have to stand for the losses because of the gross neglect and mismanagement of the company's affairs by these men. However, we as stockholders in this

company have at least learned one thing; to try to be more careful in our investments in the future.

It may be possible, however, that if a good well is brought in on this offset that is being drilled, we may get a little something back on our investment, but if this test is a failure, we are just "Plain blowed-up suckers."

With best wishes for the future, I remain,

Yours very respectfully,

(Signed)   P. O. Oulbach,
President.

Later in the year 1920 he learned that the well hoped for did not come in and that the "company had gone up." The amount of $3,100 was properly deducted by the petitioner as a loss in 1920.

In 1918 and 1919 the petitioner purchased 11,875 shares of stock of the Custer Peak Copper Co. of Deadwood, S. Dak., for $4,250. He sold such shares to Cliff Holland of Beaver Falls, Pa., on December 22, 1920, for $2.50. The petitioner had visited the property of the Custer Peak Copper Co. in June, 1920, and had determined that the stock was worthless at that time. The respondent was in error in disallowing the loss of $4,247.50 taken as a deduction on the petitioner's return for 1920.

*Judgment will be entered under Rule 50.*